UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

UNITED STATES OF AMERICA                           CRIMINAL ACTION

VERSUS                                             NO. 10-204

KENNETH BOWEN                                      SECTION  "N"  (1)
ROBERT GISEVIUS
ROBERT FAULCON
ANTHONY VILLAVASO
ARTHUR KAUFMAN
GERARD DUGUE

## ORDER AND REASONS

Presently before the Court is Defendant Bowen's "Motion for *Kastigar* Hearing to Quash Indictment" (Rec. Doc. 262). Having carefully considered the parties' several submissions, oral argument, and both documentary and evidentiary evidence relative to the motion,[1] **IT IS ORDERED** that the motion is **DENIED**.

As set forth in *Kastigar v. United States*, 406 U.S. 441 (1972), and its progeny, federal prosecutors are prohibited from using immunized state testimony in a federal criminal prosecution. *See, e.g., United States v. Martin*, 332 F.3d 827, 830 (5th Cir. 2003). "This total prohibition on use provides a comprehensive safeguard, barring the use of compelled testimony as an 'investigatory lead,' and also barring the use of any evidence obtained by focusing investigation

---

[1] *See* Rec. Docs. 262, 263, 277, 303 (Minute Entry), 366, 379 (sealed), 382 (sealed) 391 (sealed), 406 (sealed), 410, and 426 (sealed); *see also* Transcript (including sealed excerpts) of April 18, 2011 hearing.

1

on a witness as a result of his compelled disclosures." *Kastigar*, 406 U.S. at 460 (internal quotations omitted). Thus, use and derivative use immunity "leave the witness and Federal Government in substantially the same position" as if the witness had asserted his Fifth Amendment privilege not to testify. *Kastigar*, 406 U.S. at 458-59.

Accordingly, "[i]f a defendant shows that he has made immunized statements regarding matters related to the federal prosecution, the Government must establish by a preponderance of the evidence that the evidence relied upon by the grand jury was derived from independent, legitimate sources." *United States v. Daniels,* 281 F.3d 168, 180 (5th Cir.), *cert. denied*, 535 U.S. 1105 (2002) (citing *Kastigar, supra*; *United States v. Cantu,* 185 F.3d 298, 303 (5th Cir.1999)). In other words, the Government must show that the evidence upon which the federal grand jury relied was not "tainted" by immunized testimony provided in a state court proceeding. *Kastigar*, 406 U.S. at 460. "This burden of proof . . . is not limited to a negation of taint; rather, it imposes on the prosecution the affirmative duty to prove that the evidence it proposes to use is derived from a legitimate source wholly independent of the compelled testimony." *Id.*

Conclusory denials of use by federal prosecutors and investigators are alone not sufficient to carry the government's burden. *Daniels,* 281 F.3d at 181; *United States v. Seiffert,* 463 F.2d 1089, 1092 (5th Cir. 1972). On the other hand, the government's burden is a preponderance of the evidence. "The government is not required to negate all abstract 'possibility' of taint." *United States v. Byrd*, 765 F.2d 1524, 1529 (11th Cir. 1985). Further, the defendant must lay "a firm 'foundation' resting on more than 'suspicion'" that immunized testimony was before a grand jury. *United States v. Slough,* No. 10-3006, 2011 WL 1516148, *4 (D.C. Cir.); *United States v. North*, 920 F.2d 940, 949 & n. 9 (D.C. Cir. 1990)("*North* II ")(quoting *Lawn v. United States*, 355 U.S. 339,

348-49 (1958)), *cert. denied*, 500 U.S. 941 (1991)).  Nor is mere exposure of a prosecution team to immunized testimony determinative; rather, the Court considers whether immunized statements contain relevant information not otherwise readily available to the prosecution from legitimate, independent sources.  *Daniels,* 281 F.3d at 182;  *see also, e.g., Slough*, 2011 WL 1516148 at *4 (court to determine whether government would have taken same investigatory steps in absence of motivating effect of immunized testimony); *Cantu*, 185 F.3d at 303 (previously immunized defendant was never the "sole source" of important information).  Finally, misuse of immunized testimony may be harmless if an indictment is supported by adequate untainted evidence.  *See, e.g., United States v. Rogers*, 722 F.2d 557, 560 (9th Cir.  1983), *cert. denied*, 469 U.S. 835 (1984).

Here, Defendant Bowen maintains that the Government has not satisfied its *Kastigar* burden relative to the immunized testimony he gave before a Louisiana grand jury on November 1, 2006.  In particular, Bowen's motion points to (1) various meetings held by state and federal prosecutors;  (2) the Government's failure to disclose the federal grand jury witness and exhibit lists to Bowen and/or the Court;  (3) the provision of a copy of the immunized testimony to counsel for several of Bowen's state co-defendants;  (4) the reading of Bowen's immunized testimony by Michael Lohman and Ignatius Hills;  (5) the taint team's screening of only four of the more than one hundred grand jury witnesses;  (6) the taint team's failure to question federal grand jurors, as well as all grand jury witnesses, to ascertain any exposure to unredacted public documents, including any news accounts of Bowen's immunized testimony, and/or to provide them with special "Kastigar" instructions; and  (7) the taint team's failure to redact one of the copies of the state court's dismissal ruling that was provided to the federal prosecution team, as well as Bowen's state court indictment.

Additionally asserting various differences between Bowen's immunized testimony and other evidence, Bowen maintains that any taint of the case would not be harmless.

On the showings made, and considering the information available at this stage of the proceeding, the Court disagrees with Bowen's position. First, the instant matter is readily distinguishable from that in *United States v. Hampton*, 775 F.2d 1479 (11th Cir. 1985), on which Bowen heavily relies. As the *Hampton* court explained, federal prosecutors there utilized materials and information gathered by state investigators for almost three years before discovering that those materials included and were based upon immunized testimony provided by the defendant during the course of the state proceedings. 775 F.2d at 1490. Additionally, the Eleventh Circuit noted the complete absence of a showing of federal prosecutorial awareness of the immunity problem and utilization of reliable procedures for segregating the immunized testimony and its fruits from officials pursuing subsequent investigations. *Id.* Thus, under the particular circumstances of that case, "the government's burden of affirmatively proving independent sources [appeared] to have been virtually insurmountable." *Id.*

Here, unlike in *Hampton*, the declaration and April 18, 2011 testimony of United States Department of Justice Trial Attorney Karla Dobinski establishes that federal investigators and prosecutors learned of Bowen's immunized testimony shortly after it occurred and immediately instructed state officials that they were not to be told anything about that testimony or any information that came from it.[2] Indeed, Dobinski's declaration reports at length regarding efforts taken by the federal and state prosecution teams to ensure that the subsequent federal investigation

---

[2] *See* April 8, 2011 Declaration ("Dec.") (Rec. Doc. 277-1) at ¶ 22; Transcript of April 18, 2011 Hearing ("Tr.") *passim.*

was not prejudiced by any use of Bowen's immunized testimony, including assertions by both state and federal attorneys that the protected information was never communicated to the federal prosecution team.[3]

Nor is this a case in which the Court is asked to accept and rely upon only the conclusory denials of prosecuting attorneys and investigators relative to any use or derivative use of immunized testimony. To the contrary, Dobinski's declaration and testimony further set forth the laborious process employed by the Government's "taint team" to screen information provided to the federal prosecution team to ensure that the evidence set forth before the federal grand jury was not taken or derived from Bowen's immunized testimony.[4] This included the redaction of pertinent portions of documents and interviewing certain potential federal grand jury witnesses to ascertain their awareness of Bowen's immunized testimony and to warn them about not disclosing that information to the prosecution or other witnesses.[5] And, according to Dobinski, the taint team, particularly early in the process, redacted more than necessary "out of an abundance of caution."[6]

Further, as the chart prepared by the Government's taint team reflects, independent, legitimate sources more likely than not exist for the material assertions in Bowen's state grand jury testimony, *i.e.*, statements and information that the federal prosecution would find useful.[7] These sources include, moreover, prior voluntary statements by Bowen, as well as accounts, based on

---

[3] *See* Dec. (Rec. Doc. 277-1) at ¶ 23; Tr. *passim*.

[4] *See* Dec. (Rec. Doc. 277-1) *passim*; Tr. *passim*.

[5] *See* Dec. (Rec. Doc. 277-1) *passim*; Tr. at pp. 76-77, 94-101.

[6] *See* Dec. (Rec. Doc. 277-1) at ¶15; Tr. at pp.71, 75, 118 (sealed), 139-40 (sealed).

[7] *See* "Material Assertion/Independent Source Chart," Attachment 12, Rec. Doc. 382 (sealed); *see also* Dec. (Rec. Doc. 277-1) at ¶¶ 51-52; Tr.(sealed and unsealed) *passim*.

personal knowledge, of other witnesses, including Lohman and Hills. *Cf. Cantu*, 185 F.3d at 303 (defendant was never the "sole source" of important information).[8]  Additionally, much of the information is undisputed or, as asserted by the Government, involves obvious topics that any capable and experienced prosecutor, based on the facts involved, would focus, *e.g.,* audible or visual evidence of gunfire, and the existence and collection of physical evidence, including guns and spent ammunition. *Cf. Daniels*, 281 F.3d at 182 (referencing independent sources, uncontroverted facts, and a defense strategy for which a competent prosecutor would need no special insight or information to discern).[9]

As set forth above, Bowen also makes much of the actual and/or potential existence of various unspecified publicly available sources of the content of his immunized testimony, including news media reports and disclosures to unknown third parties. Specifically, he contends and that the Government should have screened all of the grand jury witnesses and the grand jurors themselves to determine their awareness of this information to ensure that it played no role in the decision to indict him. According to Dobinski, however, the taint team met with persons, including witnesses and their attorneys, who they knew or reasonably thought might have been exposed to the testimony to ascertain the impact of any exposure and to instruct against any further disclosure.[10]  Obviously, the Government could have done more and, in some situations, such efforts might be

---

[8] The Court also notes that, on one occasion, Defendant Bowen himself showed Lohman a transcript of Bowen's grand jury testimony. *See, e.g.,* Tr. at 136 (sealed).

[9] Amongst such documents are the state court dismissal ruling. *See* Tr. at pp.139-40 (sealed), *passim*. The Court additionally agrees with the Government's assertion that the bare bones information in the state court indictment did not reveal the content of immunized testimony or, in any event, its provision to the federal trial team did not result in taint fatal to the federal indictment.

[10] *See* Dec. (Rec. Doc. 277-1) at ¶¶ 38, 49; Tr. at p.76-77, 94-101.

critical or at least advisable. The Court is not convinced, however, that such additional measures were necessary here, particularly concerning grand jurors. Indeed, despite the "grand jury's recess during the daily, ubiquitous broadcast of [Oliver] North's immunized testimony," the court of appeals in *United States v. North*, 910 F.2d 843, 872 (D.C. Cir. 1990)("*North I*"), *withdrawn and superseded in part by* 920 F.2d 940 (1990), "was not persuaded . . . to require an unprecedented *Kastigar*-type hearing concerning possible exposure of individual grand jurors through the media." As stated, considering the pre-trial evidence before the Court, the Government has otherwise borne its *Kastigar* burden of demonstrating non-use of Bowen's immunized statements. Nor, in any event, has Bowen brought to the Court's attention evidence of extensive and repeated media or other public communication of the specific content of his grand jury testimony. And, finally, as the Government points out, *Kastigar* protects against use, not mere exposure. *Daniels*, 281 F.3d at 182.

In conclusion, for the reasons stated and on the showings made, the Court does not find that the Fifth Amendment protections ensured by *Kastigar* require dismissal of the charges against Defendant Bowen. Accordingly, his motion is denied.

New Orleans, Louisiana, this 17th day of June 2011.

_____
**KURT D. ENGELHARDT**
**United States District Judge**

7